1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10   SAMUEL EDWARDS,                      )    Civil No. 14cv0429 JAH(KSC)
                                          )
11                    Petitioner,         )    ORDER ADOPTING MAGISTRATE
     v.                                   )    JUDGE'S FINDINGS AND
12                                        )    RECOMMENDATIONS (DOC. #28);
     AMY MILLER, Warden, *et al.*,        )    OVERRULING PETITIONER'S
13                                        )    OBJECTIONS (DOC. # 33);
                      Respondents.        )    DENYING PETITION FOR WRIT
14   _____ )    OF HABEAS CORPUS (DOC. # 1);
                                               DENYING MOTION TO APPOINT
15                                             COUNSEL (DOC. # 37); DENYING
                                               MOTION FOR
16                                             RECONSIDERATION OF
                                               MAGISTRATE JUDGE'S
17                                             DISCOVERY ORDER (DOC. # 47);
                                               GRANTING CERTIFICATE OF
18                                             APPEALABILITY AS TO CLAIMS 1
                                               AND 2; DENYING CERTIFICATE
19                                             OF APPEALABILITY AS TO CLAIMS
                                               3, 4, 5, AND 6.
20

21

22

23            Pending before this Court are: (1) the Report and Recommendation of Magistrate

24   Judge Karen S. Crawford recommending that the Court deny Petitioner Samuel Edwards's

25   Petition for Writ of Habeas Corpus (Doc. # 28); (2) Petitioner's Motion for Appointment

26   of Counsel (Doc. # 37); and (3) Petitioner's Motion for Reconsideration of the Magistrate

27   Judge's Discovery Order (Doc. # 47). For the reasons set forth below, the Court ADOPTS

28   the magistrate judge's findings and recommendations (Doc. # 28), OVERRULES

Petitioner's objections in their entirety (Doc. # 33), DENIES the Petition for Writ of Habeas Corpus (Doc. # 1); DENIES Petitioner's Motion for Appointment of Counsel (Doc. # 37), DENIES Petitioner's Motion for Reconsideration (Doc. # 47), GRANTS a certificate of appealability as to Petitioner's claims 1 and 2, and DENIES a certificate of appealability as to Petitioner's claims 3, 4, 5 and 6.

## I. BACKGROUND

On June 14, 2010, a jury convicted Petitioner of four counts of robbery in violation of California Penal Code § 211 and use of a firearm during the commission of the robberies in violation of California Penal Code § 12022.53(b). In a bench trial held that same day, the state trial judge found true all prior conviction allegations and sentenced Petitioner to thirty-two years in state prison.

Petitioner appealed his conviction to both the California Court of Appeal and the California Supreme Court. (Lodgments 3, 7). His appeals were denied on August 16, 2012 and October 24, 2012, respectively. (Lodgments 6, 8). Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on May 15, 2013. (Lodgments 9, 10). On September 16, 2013, Petitioner filed an additional petition for writ of habeas corpus in the California Supreme Court. The petition was denied on January 15, 2014. (See Lodgments 11, 12).

On February 24, 2014, Petitioner filed the instant Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Doc. # 1). In the Petition, Petitioner challenges his California state court conviction on the grounds that: (1) he received ineffective assistance of trial counsel, (2) DNA evidence was improperly admitted at trial in violation of his due process rights, (3) he received ineffective assistance of appellate counsel, (4) there was insufficient evidence to support his count one and two convictions, (5) there was insufficient evidence to support his count three and four convictions, and (6) he was denied the right to confront witnesses against him in violation of the Sixth Amendment. On May 8, 2014, Respondent filed a response. (Doc. # 9). Petitioner then filed a traverse on July 22, 2014. (Doc. # 17). On August 7, 2014, Petitioner filed a

14cv0429

motion to supplement his motion for an evidentiary hearing. (Doc. # 19). Next, Petitioner filed a motion for appointment of an expert witness on January 9, 2015. (Doc. # 27).

On April 1, 2015, Magistrate Judge Crawford issued a Report and Recommendation ("Report") recommending that this Court deny the Petition. (Doc. # 28). In the Report, the magistrate judge also denied Petitioner's requests for an evidentiary hearing, discovery, appointment of counsel, and appointment of an expert witness. Id. Petitioner filed his objections to the Report and the denial of his various requests on June 26, 2015. (Doc. # 33). In his objections, Petitioner contends that: (1) there was insufficient evidence to support his conviction on count one, (2) there was insufficient evidence to support his conviction on count three, (3) Petitioner received ineffective assistance of trial counsel, and (4) DNA evidence was improperly admitted against him at trial. Petitioner further asserts that the magistrate judge erred in denying Petitioner's requests for: (1) an evidentiary hearing, (2) discovery, (3) appointment of an expert witness, and  (4) appointment of counsel.  Thereafter, Petitioner filed another motion for appointment of counsel on June 29, 2015. (Doc. # 37). Finally, Petitioner filed a motion for reconsideration on March 8, 2016. (Doc. # 47).

## II. FACTUAL BACKGROUND

The following factual background is taken from the California Court of Appeal's opinion in People v. Edwards, unpublished opinion (Cal. Ct. App., 4th Dist., Div.1, August 16, 2012). (See Lodgment 6).

### *May 24 Robbery (Count 1)*

On the night of May 24, 2009, Tiffany Brown drove Edwards, Rashun Mitchell  and Clayton Gaunce to a Holiday Inn Express in Oceanside. (All further date references are to the year 2009.) Edwards and Mitchell are both African-American, and Gaunce is White. While Mitchell went inside the hotel, Edwards and Gaunce put on masks, hats and sweaters. Gaunce gave Edwards a silver gun.

Jillian Gomez was the front desk clerk at the hotel that night. Around 11:30 p.m., Mitchell came to the door and Gomez let him inside. After Mitchell left, Edwards walked in, pointed a gun at Gomez and directed her to unlock the door for his accomplice. Edwards and Gaunce took Gomez's wallet from her purse and money from the cash drawer in the hotel. Before

3

leaving, the men forced Gomez to lie face down and tied her hands behind her back with zip ties.

### *May 25 Robbery (Count 2)*

Later that night, Brown drove Edwards, Mitchell and Gaunce to the Best Western in Oceanside. The three men put on masks, hats, and dark colored "hoodies" and told Brown to go inside the hotel. Brown went in the hotel to determine if there was a plexiglass barrier at the front desk and then returned to the car. Gaunce again gave Edwards the gun and the three men got out of the car.

Juan Sarmiento was the front desk clerk that night at the Best Western. Shortly before 3:00 a.m., three men came into the hotel. Two of them were wearing "hoodies" and one was wearing a mask. The man wearing the mask pointed a silver gun at Sarmiento and ordered him to get on the ground. The men tied Sarmiento's hands behind his back with zip ties and asked him where the money was kept. After taking approximately $300, the men left the hotel.

When Edwards, Gaunce and Mitchell returned to Brown's car Edwards was holding the gun. Brown drove them away from the hotel and took Edwards and Gaunce to the Mt. Vernon Inn where they were renting a room.

### *May 29 Robbery (Count 3)*

On May 29, Evan Beattie was working the front desk at the Best Western in Oceanside. At approximately 2:30 a.m., two individuals wearing ski masks came into the hotel lobby. One of the men was wearing a dark colored "hoodie" and the other had on a jacket with a hood. Beattie immediately noticed that one of the men was pointing a silver or chrome colored gun at his head. The men jumped over the counter, ordered Beattie to get on the ground and then tied his hands behind his back with zip ties. They asked where the safe was located and after Beattie told them there was no money in the safe, they asked him about the cash drawer. The men took approximately $190 from the cash drawer and left the hotel.

### *May 30 Robbery (Count 4)*

On May 30, Neil Shamon was working as the night clerk at the Mt. Vernon Inn in Escondido. At around midnight, three men walked into the hotel. One of those men pointed a silver gun at Shamon and demanded to know where the money was located. After Shamon told them the money was in the register, the men walked behind the counter, forced Shamon to put his hands behind his back, and tied him up with zip ties.

A guest at the Mt. Vernon Inn, Sandy Machin, entered the lobby and noticed that the hotel was being robbed by two African-American men and either a White or Asian man. When Machin turned around and walked out, one of the African-American men chased him and told him not to say anything. The other African-American man came out of the lobby, put a silver gun to Machin's forehead, and also told him not to say anything. Machin testified that the African-American man that chased him was not Edwards.

The three men left the hotel with approximately $600. Machin went back into the hotel lobby and untied Shamon. Shamon called the police.

*Investigation*

On June 3, police officers found Edwards, Gaunce and two other people in a hotel room at the Best Value Inn in Escondido. Gaunce and Edwards said that the room was registered to them. Inside the room, officers found a silver gun behind the television. They also found a black "hoodie" with gloves and a ski mask in the pockets.

A DNA analysis performed on the gun showed that at least two people contributed to the DNA found on the trigger, with Gaunce being a major contributor. Edwards was a major contributor of DNA found on the mask and sweatshirt.

## III. STANDARD OF REVIEW

### A. Scope of Review of Magistrate Judge's Report and Recommendation

The district court "shall make a de novo determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b). A district court may adopt those parts of a magistrate judge's report to which no specific objection is made, provided they are not clearly erroneous. Thomas v. Arn, 474 U.S. 140, 153–55 (1985).

### B. Scope of Review of Federal Habeas Petition Pursuant to 28 U.S.C. § 2254

This Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was: (1) contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 7–8 (2002). That standard under AEDPA is difficult to meet and "'demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotations omitted).

A federal habeas court may grant relief where the state court decides a case "contrary to" federal law by applying a rule different from the governing law set forth in

14cv0429

Supreme Court cases or decides a case differently than the Supreme Court on a set of indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A federal court may also grant habeas relief where a state court decision is an "unreasonable application" of clearly established federal law, such as where the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the facts at issue. Id. at 407. The state court decision must be more than incorrect; to warrant habeas relief the state court's application of "clearly established federal law" must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "Objectively unreasonable" differs from "clear error" in that a federal court cannot grant relief only because it believes the state court erroneously applied clearly established federal law; rather, the application must be objectively unreasonable. Id. at 75–76 (internal citation omitted).

If a state supreme court silently denies a petitioner's appeal with a summary dismissal, the reviewing federal habeas court must review the last reasoned state court opinion in making a decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04, 806 (1991). Where the state courts supply no reasoned decision on the claims presented for review, this Court must perform an "'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (internal citations omitted).

AEDPA's standard of review does not apply when a state court did not reach the merits of a claim (e.g. because a procedural bar prevented it). Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002). "Instead, the claim is reviewed de novo." Cone v. Bell, 129 S. Ct. 1769, 1784 (2009).

## IV. DISCUSSION

### A.  Claim Four - Insufficient Evidence for Conviction in Counts One and Two

In claim four of the Petition, Petitioner argues there was insufficient evidence to convict him of the count one and two robberies.  Petitioner first raised this claim in a petition for writ of habeas corpus to the California Supreme Court, which was denied

14cv0429

without comment or citation. (See Lodgments 9, 10). The magistrate judge concluded that Petitioner was not entitled to habeas relief on claim four, and Petitioner objected. For the following reasons, the Court overrules Petitioner's objection, adopts the magistrate judge's reasoning as to this claim, and finds that Petitioner is not entitled to habeas relief on his claim of insufficient evidence regarding counts one and two.

### 1.   Summary of the Report's Conclusions

Because there is no reasoned state court decision, the magistrate judge conducted an independent review of the record to see if the state supreme court's decision was objectively unreasonable. (Doc. # 28, pg. 12 (citing Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003)). After doing so, the magistrate judge determined that the state court's denial of claim four was not objectively unreasonable, thus Petitioner was not entitled to habeas relief on this claim. (Doc. # 28, pg. 11–21).

The magistrate judge determined that there was sufficient evidence upon which a reasonable jury could have found Petitioner guilty of the count one and two robberies and related firearm enhancements. Id. at 12–16. The evidence relating to the count one robbery of the Oceanside Holiday Inn Express and corresponding firearm enhancement included: (1) testimony of Jillian Gomez ("Gomez"), the front desk clerk of the Oceanside Holiday Inn Express on the night of the robbery, recounting the robbery, (2) Gomez's identification of Petitioner as the robber who was carrying the gun, (3) testimony of Tiffany Brown ("Brown") that she drove Petitioner, Clayton Gaunce ("Gaunce"), and Rashun Mitchell ("Mitchell") to the Holiday Inn Express and Petitioner walked towards the hotel holding a gun, (4) hotel surveillance footage of the robbery that is consistent with the witnesses' testimony, (5) a dark hoodie, gun, and mask recovered from the hotel room in which police found Petitioner and Gaunce, and (6) DNA test results showing that Petitioner was a major contributor of DNA on the hoodie and mask. Id. at 12–14.

As to the count two robbery of the Oceanside Best Western and related firearm enhancement, evidence produced at trial included: (1) Brown's testimony that she drove Petitioner, Gaunce, and Mitchell to the Best Western in Oceanside and Petitioner was the

holding a silver gun when the three men walked towards the hotel, (2) testimony of Juan Sarmiento, the front desk clerk at the Best Western on the night of the robbery, that he was robbed by three men and the robber holding the gun was black and was wearing a dark hoodie, (3) hotel surveillance footage showing the robbery, (4) a dark hoodie, gun, and mask recovered from the hotel room in which police found Petitioner and Gaunce, and (5)DNA test results showing that Petitioner was a major contributor of DNA on the hoodie and mask. Id. at 15–16. Because there was sufficient evidence to support the convictions, the magistrate judge concluded that it was not unreasonable for the state court to have denied Petitioner's claim alleging insufficient evidence to convict him of counts one and two and the corresponding firearm enhancements. Id.

The magistrate judge further concluded there was sufficient evidence to support Petitioner's count one and two convictions despite Petitioner's assertion that the DNA evidence offered against him was unreliable because it was purportedly cross-contaminated. Id. at 16–17. The magistrate judge acknowledged that she must view the evidence in the light most favorable to the verdict, and, in doing so, concluded that the jury credited the testimony of the prosecution's DNA expert Cathy Chang ("Chang") that Petitioner's DNA was found on the hoodie and mask recovered from the hotel room. Id. at 17. Moreover, the magistrate judge found that, irrespective of the DNA evidence, there was substantial evidence to support Petitioner's convictions on counts one and two. Id. Next, the magistrate judge found that Gomez's in-court identification of Petitioner was not impermissibly suggestive as to render his trial unfair under Baker v. Hocker, 496 F.2d 615 (9th Cir. 1974), and Gomez's identification was based on her independent recollection of Petitioner's face during the robbery. Id. at 17–19. Finally, the magistrate judge found there was sufficient evidence to support Petitioner's convictions on counts one and two regardless of whether Brown's testimony should have been excluded and that California's rule requiring corroboration of accomplice testimony is not a federal mandate on which Petitioner could assert a federal due process claim. Id. at 20–21.

///

14cv0429

### 2.    Objection to the Report's Conclusions

In his objections to the Report, Petitioner reasserts his argument that there was insufficient evidence as to count one. Specifically, Petitioner asserts that Gomez's in-court identification of Petitioner was unduly suggestive and not based on independent recollection. Petitioner further asserts that the magistrate judge erred in not reviewing the reliability of Gomez's identification of Petitioner under <u>Neil v. Biggers</u>, 409 U.S. 188 (1972), and <u>Manson v. Brathwaite</u>, 432 U.S. 98 (1977). Petitioner does not reassert his insufficient evidence argument as to count two.

### 3. Analysis

Because Petitioner did not file objections to the magistrate judge's determination that there was sufficient evidence supporting Petitioner's count two conviction and firearm enhancement, and the magistrate judge's analysis was not clearly erroneous, the Court adopts the magistrate judge's findings and conclusions that Petitioner is not entitled to habeas relief as to this claim. And for the reasons discussed below, the Court also adopts the magistrate judge's findings and conclusions that Petitioner is not entitled to habeas relief regarding his claim of insufficient evidence to support his count one conviction and related firearm enhancement.

A habeas court reviewing a sufficiency of the evidence claim must consider all evidence admitted at trial, notwithstanding a contention by a petitioner that some of the admitted evidence should have been excluded. <u>McDaniel v. Brown</u>, 558 U.S. 120, 131 (2010) (per curiam). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Id.</u> (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). In evaluating such claims, the court must presume, even if it does not affirmatively appear in the record, that the jury resolved any conflicting inferences in favor of the prosecution.

14cv0429

Wright v. West, 505 U.S. 277, 296–97 (1992) (citing Jackson, 443 U.S. at 326)).
Additional deference is added to this standard by 28 U.S.C. § 2254(d), which requires the
petitioner to demonstrate that the state court's adjudication involved an unreasonable
application of the Jackson standard. See Juan H. v. Allen, 408 F.3d 1262, 1274–75 (9th
Cir. 2005); see also McDaniel v. Brown, 558 U.S. at 132–33. Only if no rational trier of
fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.
Jackson, 443 U.S. at 324.

To sustain a robbery conviction under California law, the prosecution must prove:
(1) the defendant took property that was not his own; (2) the property was in the
possession of another person; (3) the property was taken from the other person or her
immediate presence; (4) the property was taken against that person's will; (5) the
defendant used force or fear to take the property or to prevent the person from resisting;
and (6) when the defendant used force or fear to take the property,  he intended to
deprive the owner of it permanently or to remove it from the owner's possession for such
a period of time that the owner would be deprived of a major portion of the value or
enjoyment of the property. CAL. PENAL CODE § 211; CALCRIM No. 1600.

To sustain a firearm enhancement under California law, the prosecution must prove
that the defendant personally used a firearm in the commission of a specified felony. CAL.
PENAL CODE § 12022.53(b). Robbery is among the specified offenses covered by this
statute. CAL. PENAL CODE § 12022.53(a)(4). "The firearm need not be operable or loaded
for this enhancement to apply." CAL. PENAL CODE § 12022.53(b).

The Due Process Clause prohibits the use of eyewitness identification procedures
that are "both suggestive and unnecessary." Perry v. New Hampshire, 132 S. Ct. 716, 724
(2012). An identification procedure is impermissibly suggestive when it places a special
focus on an individual such that it communicates to the witness that "this is the man."
Foster v. California, 394 U.S. 440, 443 (1969). The "bare fact that [an identification] was
suggestive does not alone establish constitutional error. The [identification] must be
impermissibly or unduly suggestive." Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.1995).

14cv0429

And if unduly suggestive, "the court must determine whether [the identification procedure] was sufficiently reliable such that it does not implicate the defendant's due process rights." U.S. v. Carr, 761 F.3d 1068, 1074 (9th Cir. 2014); see also Neil v. Biggers, 409 U.S. 188, 199 (1972) (looking at the totality of circumstances to determine if the identification was reliable). In order to determine whether the identification was reliable even when the procedure was suggestive, a court should consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and pretrial identification. Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

Petitioner asserts that his due process rights were violated by Gomez's identification of him as the gunman in the count one robbery because the identification was unduly suggestive. As noted above, in reviewing Petitioner's sufficiency of the evidence claim, this Court must consider all evidence admitted at trial, regardless of whether it should have been excluded. See McDaniel v. Brown, 558 U.S. 120, 131 (2010) (per curiam). Thus, in analyzing Petitioner's insufficient evidence claim, this Court considers Gomez's testimony identifying Petitioner as the gunman in the count one robbery in light of all of the evidence regardless of whether the testimony should have been admitted at trial. As a result, the Court concludes that the evidence presented at trial was sufficient for a rational jury to conclude beyond a reasonable doubt that Petitioner committed the count one robbery and used a firearm during that robbery.

At trial, the prosecution presented testimony from Gomez that she was working at the front desk of the Oceanside Holiday Inn Express during the robbery. Mitchell, Gomez's ex-boyfriend, entered the hotel lobby at 11:30 p.m. on May 24, 2009. Gomez told him there were no available rooms, and Mitchell left. A few minutes later, Petitioner came to the door of the hotel, and Gomez buzzed him in. Gomez then noticed Petitioner was wearing a dark hoodie and carrying a silver gun. Petitioner jumped over the front desk,

put a gun to Gomez's head, and told Gomez to press a button to open the lobby door. Gomez complied, and Gaunce entered the hotel lobby. Thereafter, Petitioner and Gaunce took money from the hotel's cash drawer, tied Gomez's hands behind her back with zip ties, took Gomez's wallet, and left. The jury saw hotel surveillance footage consistent with Gomez's testimony. Gomez also testified that the gun used in the count one robbery looked like the gun that police recovered from the hotel room in which Petitioner and Gaunce were found.  In addition, Gomez positively identified Petitioner as the count one robber and gunman.

The jury also heard from Brown that she drove Petitioner, Mitchell, and Gaunce to the Oceanside Holiday Inn Express on the night of the robbery. Brown stated that Mitchell went into the hotel first. While he was inside, Petitioner and Gaunce covered their faces with masks, hats, or bandanas. After Mitchell returned to the car, Brown saw Gaunce hand Petitioner a gun as the two walked towards the hotel entrance. Several minutes later, they returned to the car, and Petitioner handed the gun back to Gaunce. In sum, the Court finds there was sufficient evidence presented at trial from which a reasonable jury could have convicted Petitioner of the count one robbery of the Oceanside Holiday Inn Express and corresponding firearm enhancement.

Further, Gomez's in-court identification of Petitioner was not unduly suggestive or a due process violation.  The Ninth Circuit concluded in Baker v. Hocker that an in-court identification of a defendant who is sitting at the defense table alongside two men who have already been identified is not impermissibly suggestive as to render the identification a due process violation. 496 F.2d 615, 617 (9th Cir. 1974).[1]  Baker is applicable as the

---

[1]In Baker, the Ninth Circuit noted that under Neil v. Biggers, an identification must be unnecessarily suggestive and, under the totality of the circumstances, create a substantial likelihood of irreparable misidentification. 496 F.2d 615, 617 (9th Cir. 1974). Nonetheless, the Ninth Circuit held that a robbery victim's identification of the defendant first at the preliminary hearing and later at trial was not unnecessarily suggestive even though in both instances the defendant was sitting next to two other men who had been previously identified by the victim at a line-up. Id. Further, the Ninth Circuit noted that such an identification does not, under the totality of the circumstances, create the substantial likelihood of misidentification when the victim had ample opportunity to view the robber during the crime, was certain of his identification, the in-court identification occurred only three months after the crime, and the victim's general description of the

identification in that case is nearly identical to Gomez's identification of Petitioner. Here, Gomez first identified Petitioner as the count one robber and gunman at a preliminary hearing where Petitioner appeared with Gaunce and Mitchell. Gomez had previously identified Gaunce and Mitchell using photographs. Gomez adamantly asserted on direct and cross examination that she saw Petitioner's face when he entered the hotel and advanced across the hotel lobby towards her with a gun in hand. Petitioner makes much of one question in the trial transcript, which Petitioner alleges shows that Gomez identified Petitioner because he was the only defendant left at the defense table who Gomez had yet to identify. The transcript, part of the prosecution's redirect, reads:

> Question:  Mr. Daniele just brought up a previous court hearing. And did you pick the Defendant out as the person with the gun by process of elimination when you were just seated in court -
>
> Answer:  Yes.
>
> Question:  -- At the last hearing?
>
> Answer:  No.

(Lodgment 2, Rep.'s Tr. vol. 2, pg.163). The Court interprets the evidence in the light most favorable to the prosecution as required and finds that Gomez answered that she had not picked Defendant out as the gunman through a process of elimination at the last hearing. Although Gomez says "yes" in the middle of the prosecutor's question, she definitively answers that she did not use process of elimination to identify Petitioner as the gunman after hearing the prosecutor's entire question. Such an interpretation is consistent with Gomez's many assertions that she saw Petitioner's face during the robbery. Accordingly, the Court finds that Gomez's identification is not unduly suggestive and does not amount to a due process violation.

Next, Petitioner asserts that the magistrate judge erred in failing to apply the identification reliability factors set forth in both Neil v. Biggers, 409 U.S. 188, 199–200 (1972) and Manson v. Brathwaite, 432 U.S. 98, 114 (1977). The Court finds there was

---

defendant, given after the crime, was not inconsistent with the defendant's appearance. Id.

no error. In determining whether a pretrial identification procedure was so suggestive that it amounts to a due process violation, a court first determines whether an identification was impermissibly suggestive. <u>Neil</u>, 409 U.S. at 196. If the identification was impermissibly suggestive, then the court determines whether the identification was nonetheless reliable. <u>United States v. Love</u>, 746 F.2d 477, 478 (9th Cir. 1984) (per curiam). To determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive," the court would consider the reliability factors set forth in <u>Neil</u>. <u>See</u> 409 U.S. 188, 199–200 (1972).

Here, the magistrate judge correctly determined under <u>Baker v. Hocker</u> that Gomez's in-court identification of Petitioner was not impermissibly suggestive. (<u>See</u> Doc. # 28, pg. 19). After making this finding, it was not necessary for the magistrate judge to then apply all of the reliability factors set forth in <u>Neil</u>. <u>See id.</u> at 19.

In sum, the Court finds that, in viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence to support Petitioner's convictions for the count one robbery and the related firearm enhancement. Thus, the state appellate court's denial of Petitioner's claim of insufficient evidence to support his count one conviction was not objectively unreasonable or contrary to United States Supreme Court authority, and Petitioner is not entitled to habeas relief on this claim.

## B.  Claim Five - Insufficient Evidence for Conviction in Counts Three and Four

In  claim five of the Petition, Petitioner argues that there was insufficient evidence to convict him of the count three and four robberies.  The state appellate court denied this claim and affirmed Petitioner's count three and four convictions concluding that the record contained substantial evidence to support these convictions.  (Lodgment 6). The magistrate judge determined that Petitioner was not entitled to habeas relief on claim five, and Petitioner objected. For the following reasons, the Court overrules Petitioner's objection, adopts the magistrate judge's reasoning as to this claim, and finds that Petitioner is not entitled to habeas relief on his claim of insufficient evidence regarding his count three and four convictions and related firearm enhancements.

### 1.    Summary of the Report's Conclusions

The magistrate judge found that the state appellate court's denial of this claim was not contrary to or an unreasonable application of United States Supreme Court authority, thus Petitioner was not entitled to habeas relief on this claim. (Doc. # 26, pg. 21–26). The magistrate judge determined that, when viewed in the light most favorable to the prosecution, a reasonable jury could have found Petitioner guilty of the count three and four robberies and the related firearm enhancements. In making the finding regarding the count three robbery and firearm enhancement, the magistrate judge considered evidence presented at trial including: (1) eye witness testimony of Evan Beattie ("Beattie"), the Oceanside Best Western front desk clerk who was working at the time of the robbery, (2) hotel surveillance footage of the robbery that is consistent with Beattie's testimony, (3) a silver gun recovered from the hotel room in which Petitioner was found that is consistent with Beattie's description of the gun used in the robbery, (4) and the similarity between all four robberies. Id. at 23–25.

As to count four, the magistrate judge considered the following evidence presented at trial: (1) eye witness testimony of Neil Shamon ("Shamon"), the Mount Vernon Inn night manager who was working at the front desk at the time of the robbery, (2) the testimony of Sandy Machin ("Machin"), a hotel guest who witnessed the robbery and was threatened by two of the robbers, (3) hotel surveillance footage of the robbery that is consistent with Beattie and Machin's testimony, (4) a dark hoodie, gun, and mask that were recovered from the hotel room in which police found Petitioner and Gaunce and are consistent with the witnesses' descriptions of the robbers' apparel and gun, (5) DNA test results showing Petitioner's DNA on the mask and hoodie, and (6) the similarity between all four robberies. Id. at 24–26. Finding the above-mentioned evidence sufficient evidence to support the count three and four convictions, the magistrate judge concluded that it was not unreasonable for the state appellate court to deny this claim in that the denial was not contrary to or an unreasonable application of United States Supreme Court law. Id. at 26.

### 2.    Objection to the Report's Conclusions

14cv0429

Petitioner objects to the magistrate judge's determination that he is not entitled to relief as to his claim of insufficient evidence as to count three.  Petitioner does not assert that there is insufficient evidence to prove that the count three robbery of the Oceanside Best Western occurred. Rather, Petitioner asserts that there was insufficient evidence presented at trial that he, rather than Mitchell, was the robber brandishing the gun in the count three robbery of the Oceanside Best Western. Petitioner does not reassert his insufficiency of evidence argument as to count four.

### 3.    Analysis

Because Petitioner did not file an objection to the magistrate judge's determination that there was sufficient evidence supporting Petitioner's count four conviction, and the magistrate judge's analysis was not clearly erroneous, the Court adopts the magistrate judge's findings and conclusions that Petitioner is not entitled to habeas relief as to this claim. And for the reasons discussed below, the Court also adopts the magistrate judge's findings and conclusions that Petitioner is not entitled to habeas relief regarding his claim of insufficient evidence to support his count three conviction.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir.1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In evaluating such claims, the court must presume, even if it does not affirmatively appear in the record, that the jury resolved any conflicting inferences in favor of the prosecution. Wright v. West, 505 U.S. 277, 296–97 (1992) (citing Jackson, 443 U.S. at 326). Additional deference is added to this standard by 28 U.S.C. § 2254(d), which requires the petitioner to demonstrate that the state court's adjudication involved an unreasonable application of the Jackson standard. See Juan H. v. Allen, 408 F.3d 1262, 1274–75 (9th Cir. 2005); see also McDaniel v. Brown, 558 U.S. 120, 132–33 (2010) (per curiam).  Only if no rational trier

14cv0429

1   of fact could have found proof of guilt beyond a reasonable doubt, may the writ be

2   granted. Jackson, 443 U.S. at 324.

3      The state appellate court applied the Jackson standard and concluded that

4   substantial evidence supported Petitioner's count three and four robbery convictions and

5   related firearm enhancement convictions.[2] Specifically, the state appellate court noted:

7   *B. Sufficient Evidence Supported the Jury's Verdicts on Counts 3 and 4*

8           There was considerable evidence from which the jurors could have
9   reasonably found that Edwards participated in the robberies charged in
    counts 3 and 4 at the Best Western and Mt. Vernon Inn. Officers found a
10  black "hoodie" and a ski mask in Edwards's hotel room.  Edwards's DNA
    was on both of those items. Officers also found a silver gun hidden behind
    the television.

12          Surveillance videos of the four robberies showed two men in dark
    hooded sweatshirts or jackets participating in the robberies. Those men
13  appear to be the same individuals in each instance. One of the men in the
    videos relating to counts 3 and 4 is brandishing a firearm. Although it is
14  difficult to ascertain the color of the firearm in the video pertaining to count
    3, it appears to be silver. The silver color of the gun is clear in the video
    pertaining to count 4.

16          The testimony of the victims is consistent with the videos. Beattie
    testified that two individuals wearing dark hooded sweatshirts or jackets
17  robbed the Best Western while he was working on May 29. According to
    Beattie, one of the men pointed a silver or chrome colored gun at his head.
18  Machin, a witness to the Mt. Vernon Inn robbery on May 30, testified that
    he saw two African-American men and either a White or Asian individual
19  robbing the hotel. Two of the men were wearing dark "hoodies." Machin and
    Shamon, the night clerk at the Mt. Vernon Inn, both recalled that the gun
    used in the robbery was silver.

21          Additionally, all four hotel robberies were committed in a similar
    fashion over a short period of time. The perpetrators wore dark hooded
22  clothing, displayed a silver gun and tied their victims' hands behind their
    backs with zip ties. These characteristics are distinctive and support a strong
    inference that the same individuals were involved in the crimes.

24          Based on the totality of the evidence and all reasonable inferences
    drawn from that evidence, the jury could reasonably find that Edwards was
25  involved in a robbery spree that spanned over a week. Thus, there was
    sufficient evidence to support the jury's guilty verdicts on counts 3 and 4.

26  *C. True Findings on Firearm Enhancements on Counts 3 and 4*

28          [2]See supra pg. 10 (providing the elements required to sustain convictions of robbery and a
    firearm enhancement).

"A firearm use enhancement attaches to an offense ... if the firearm use aids the defendant in completing one of its essential elements." *(People v. Masbruch* (1996) 13 Cal.4th 1001,1012.) Moreover, "a gun may be used 'in the commission of' a given crime even if the use is directed toward someone other than the victim of that crime." (*People v. Granado* (1996) 49 Cal. App. 4th 317, 329–330.) Thus, "a defendant uses a gun 'in the commission' of a crime when he or she employs the gun to neutralize the victim's companions, bystanders, or other persons who might otherwise interfere with the successful completion of the crime." (*Id.* at p. 330.)

With respect to the true finding on the firearm enhancement on count 3, the Best Western robbery on May 29, we conclude there was sufficient evidence to prove Edwards "personally used" a firearm. The surveillance videos of counts 1 and 2 show at least two men entered the hotel lobbies; the first one was holding a gun and another was wearing a red hat. As Edwards points out, the person wearing the red hat must have been Gaunce because the evidence showed that Edwards had the gun and was the first person to enter the hotels. Similarly, the surveillance video of count 3 shows that the first robber entered the hotel with a gun and was followed by a man in a red hat. Based on the similarity of the crimes and the way they were committed, the jury could reasonably infer that Edwards was the individual with the firearm, as opposed to the one in the red hat.

With respect to the true finding on the firearm enhancement on count 4, the Mt. Vernon Inn robbery on May 30, we conclude the evidence was sufficient to prove Edwards "personally used" a firearm. The evidence showed that three perpetrators committed the robbery at the Mt. Vernon Inn; two African-Americans and one Asian or White individual. It was undisputed that Edwards and Mitchell are both African-American, and Gaunce is White. Machin testified that when he saw the robbery taking place, he left the hotel lobby and an African-American man chased him. According to Machin, that man was not Edwards. The other African-American man then came out of the lobby and put a gun up to Machin's forehead. Based on this evidence, the jury could reasonably infer that Edwards was the individual using the firearm.

In sum, there was sufficient evidence to support the firearm enhancements on counts 3 and 4.

(Lodgment 6, pg. 5–8.)

The Court concludes that the evidence presented at trial was sufficient for a rational jury to conclude beyond a reasonable doubt that Petitioner committed the count three robbery and used a firearm therein. At trial, the prosecution provided evidence from Beattie, who was working at the front desk of the Oceanside Best Western during the robbery. Beattie stated that two men entered the hotel lobby wearing dark hoodies or jackets and masks. (Lodgment 2, Rep.'s Tr. Vol. 2, pg. 233, 242–43). One man was carrying a silver gun, which he pointed at Beattie's head. Id.

at 233. The other man was unarmed and wore a hat with a red brim underneath his hood. Id. at 239–40.  The two men jumped over the counter and told the clerk to get on the ground.  Id. at 234.  One man used zip ties to tie Beattie's hands behind his back. Id. at 234.  After demanding money, the men took $193 from the hotel's cash box. Id. at 235–36. The jury saw hotel surveillance footage that was consistent with Beattie's testimony. Id. at 237, 239–40. Beattie also testified that the gun used in the count three robbery looked like the gun that police recovered from the hotel room in which Petitioner and Gaunce were found. Id. at 241.

Although no eye witness identified Petitioner as the gunman in the count three robbery, the Court finds there was sufficient circumstantial evidence presented at trial from which a reasonable jury could have inferred that Petitioner was the gunman in the count three robbery. First, evidence presented at trial showed that the count three robbery was extremely similar to the robberies in counts one and two. (See, e.g., Lodgment 2, Rep.'s Tr. Vol. 2, pg. 137–44 (Count 1), 205–12 (Count 2), 230–38 (Count 3)). Second, Gomez, the hotel clerk in the count one robbery, identified Petitioner as the gunman robber and Gaunce as the robber wearing the red brimmed hat. Id. at 137–38, 144–48, 159. Third, the prosecution presented testimony from Brown that Petitioner carried the gun in the count one and two robberies. (Lodgment 2, Rep.'s Tr. Vol. 3, pg. 323–24, 329–31).   Additionally, police recovered a loaded silver gun from the hotel room in which they found Petitioner and Gaunce. Based on evidence that Gaunce wore a red brimmed hat and Petitioner had carried the gun in the count one and two robberies, there was sufficient evidence for the jury to convict Petitioner of the count three robbery and firearm enhancement. "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (internal citation omitted); see also United States v. Kelly, 527 F.2d 961, 965 (9th Cir. 1976) (stating that "circumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned, and that circumstantial evidence can be used to

prove any fact, including facts from which another fact is to be inferred").

In sum, the Court finds there was substantial direct and circumstantial evidence presented at trial for a rational trier of fact to have found Petitioner guilty of the count three robbery and firearm enhancement beyond reasonable doubt. Thus, the state appellate court's denial of this claim was not objectively unreasonable or contrary to United States Supreme Court authority, and Petitioner is not entitled to habeas relief on this claim.

## C.  Claim One - Ineffective Assistance of Trial Counsel

In claim one of his Petition, Petitioner contends that trial counsel provided ineffective assistance by: (1) failing to properly challenge the prosecution's DNA evidence linking Petitioner to clothing items and the gun recovered by police from the hotel room where Petitioner was found, and (2) failing to refute testimony that Petitioner was registered to the hotel room in which the items were found. (Doc. # 1, pg. 40–44, 87–98). Petitioner further argues that trial counsel knew the prosecution's DNA evidence was cross-contaminated, so counsel should have requested funds to hire an expert witness to re-test that evidence and called the expert witness at trial to rebut testimony of the prosecution's DNA expert. (Doc. #1, pg. 88–89).  Petitioner first raised this claim in a petition for writ of habeas corpus to the California Supreme Court, which was denied on procedural grounds. (Lodgments 11, 12).[3] The magistrate judge concluded that Petitioner was not entitled to habeas relief on this claim, and Petitioner objected. For the following reasons, the Court overrules Petitioner's objection, adopts the magistrate judge's reasoning as to this claim, and finds that Petitioner is not entitled to habeas relief on his claim of ineffective assistance of trial counsel.

---

[3]The California Supreme Court denied Petitioner's petition with citations to In re Clark, 5 Cal. 4th 750, 767–69 (1993), People v. Duvall, 9 Cal. 4th 464, 474 (1995), and In re Dixon, 41 Cal.2d 756, 759 (1953). (See Lodgment 12). As the magistrate judge correctly noted, these citations stand for the propositions that Petitioner's petition was procedurally flawed and thus procedurally barred. (See Doc. # 28, pg. 6–8).

14cv0429

### 1.    Summary of the Report's Conclusion

Because the state court denied this claim on procedural grounds, the magistrate judge correctly conducted a de novo review rather than applying AEDPA's deferential standard.  See Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005). After doing so, the magistrate judge concluded that Petitioner was not entitled to habeas relief on this ground.

First, regarding the DNA evidence, the magistrate judge found that Petitioner failed to show that his trial counsel's performance was unreasonable or had prejudiced Petitioner, which must be established to successfully assert a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). (Doc. # 28, pg. 27–31). The magistrate judge determined that Petitioner had not shown that it was unreasonable for his trial counsel to forego expending resources to hire an expert to challenge the prosecution's DNA evidence when there was an abundance of other evidence linking Petitioner to the robberies. Id. at 30–31. The magistrate judge noted that counsel had instead opted to cross-examine the prosecution's DNA expert about the possibility of cross-contamination, and found that this decision was part of counsel's strategy.  The magistrate judge also found that Petitioner did not show that he was prejudiced by trial counsel's failure to hire an expert witness because Petitioner only hypothesized that an expert would testify in his favor and did not show that a jury would discredit the other evidence linking him to the robberies if an expert testified that the clothing items were cross-contaminated. Id. at 31.

Second, regarding evidence about the hotel room registration, the magistrate judge determined that Petitioner did not show that it was unreasonable or prejudicial for trial counsel to fail to present a receipt purportedly showing that only Gaunce was registered to the hotel room in which police found Petitioner and Gaunce. Id. at 31. The magistrate judge found that presenting the receipt at trial would not have contradicted the officers' trial testimony that they *believed* Petitioner was registered to the room based on Petitioner's own statements. Id. at 32. Because the receipt did not

contradict that testimony and because police found Petitioner inside the hotel room, the magistrate judge concluded that it was not unreasonable for Petitioner's trial counsel to decline to introduce the receipt as evidence at trial. Id. Further, the magistrate judge found that Petitioner failed to establish that trial counsel's failure to present the receipt prejudiced Petitioner because the jury could have found that some of the items in the hotel room belonged to Petitioner based on his presence alone. Id. Moreover, the magistrate judge noted that there was other substantial evidence linking Petitioner to the robberies, such that Petitioner failed to establish the reasonable probability that the result of the trial would have been different had the receipt been introduced. Id. at 32–33.

### 2.    Objection to the Report's Conclusions

In his objections, Petitioner argues that the magistrate judge erred in finding that Petitioner was not entitled to habeas relief as to his claim for ineffective assistance of trial counsel. Specifically, Petitioner contends that trial counsel's failure to hire an expert to independently investigate the prosecution's DNA evidence was "objectively unreasonable," prejudicial, and amounts to a failure by trial counsel "to properly prepare a defense for his client at the trial." Id. at (Doc. # 33, pg. 17–18, 20.)

### 3.    Analysis

Petitioner does not object to the magistrate judge's determination that trial counsel's failure to present the receipt purporting to show that only Gaunce was registered to the Best Value Inn room in which Petitioner was found did not result in prejudice such that the result of the trial would have been different.  Because Petitioner did not file an objection thereto and the magistrate judge's analysis was not clearly erroneous, the Court adopts the magistrate judge's finding and conclusions that Petitioner has not established ineffective assistance of counsel based on trial counsel's failure to present the receipt. See Thomas v. Arn, 474 U.S. 140, 152–53 (1985).  For the reasons set forth below, the Court also adopts the magistrate judge's findings and conclusions that Petitioner is not entitled to habeas relief regarding his claim of

14cv0429

ineffective assistance of trial counsel based on trial counsel's decision not to hire an independent expert to re-test the prosecution's DNA evidence.

Federal habeas courts "review ineffective assistance of counsel claims in the deferential light of Strickland." Brown v. Ornoski, 503 F.3d 1006, 1011 (9th Cir. 2007). Under Strickland, to establish ineffective assistance, Petitioner must demonstrate that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to establish either prong is fatal to the claim. See id.

To satisfy the deficient performance element, the challenger must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Harrington v. Richter, 562 U.S. 86, 112 (2011) (stating "[t]he likelihood of a different result must be substantial, not just conceivable"). "Because failure to meet either [Strickland ] prong is fatal to [an ineffective assistance of counsel] claim, there is no requirement that we 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" Gonzalez v. Wong, 667 F.3d 965, 987 (9th Cir. 2011) (citing Strickland, 466 U.S. at 697).

Further, courts resolving an ineffective assistance of counsel claim do not inquire into what means and strategies defense counsel might have pursued, but rather whether the choices counsel actually made were reasonable. Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998) (citing Strickland, 466 U.S. at 690). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and reviewing courts defer to counsel's reasonable tactical decisions. Strickland, 466 U.S. at 689.

1  Here, the Court finds that Petitioner has not established the reasonable
2  probability that the result of the proceedings would have differed had trial counsel
3  retained an expert to independently test the DNA evidence for cross-contamination.
4  Petitioner argues that if his trial counsel had hired an expert to test the DNA evidence
5  and the expert had opined that the DNA evidence was unreliable, then the jury would
6  have disregarded other incriminating evidence, including Gomez and Brown's
7  testimony establishing Petitioner as a robber and gunman. "Speculation about what an
8  expert could have said is not enough to establish prejudice" and does not raise a
9  "'reasonable probability' that the outcome of the trial would have been different."
10  Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997). Thus, Petitioner has failed to
11  show prejudice, which is fatal to his claim for ineffective assistance of counsel, and this
12  Court need not address whether trial counsel's performance was deficient. Accordingly,
13  the Court finds that Petitioner is not entitled to habeas relief on this claim.

14  **D.  Claim Two - Improperly Admitted DNA Evidence**

15  In claim two of his Petition, Petitioner argues that the trial court violated his due
16  process rights by admitting cross-contaminated DNA evidence. (Doc. # 1, pg. 51–52).
17  Specifically, Petitioner asserts that the black hoodie, ski mask, and gloves found in the
18  hotel room where he was apprehended were cross-contaminated when police
19  confiscated those items and placed them in Petitioner's black backpack, also located in
20  the hotel room. As a result, Petitioner argues that his DNA was erroneously transferred
21  to those items.  Petitioner further contends that "newly discovered evidence on how the
22  cross-contamination occurred" undermines the prosecution's theory that the DNA
23  found on the black hoodie jacket and mask belonged to Petitioner, and that no
24  reasonable jury would have found him guilty if this cross-contaminated evidence had
25  not been admitted at trial. Id. at 47–52.  Petitioner first raised this claim in a petition
26  for writ of habeas corpus to the California Supreme Court, which was denied on
27  procedural grounds. (Lodgments 9, 10). The magistrate judge concluded that Petitioner
28  was not entitled to habeas relief on this claim, and Petitioner objected. For the

14cv0429

following reasons, the Court overrules Petitioner's objection, adopts the magistrate judge's reasoning as to this claim, and finds that Petitioner is not entitled to habeas relief on his due process violation claim.

### 1.   Summary of the Report's Conclusions

Because the state court denied this claim on procedural grounds without reaching the merits, the magistrate judge correctly conducted a de novo review rather than applying AEDPA's deferential standard.  See Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005). The magistrate judge then concluded that Petitioner was not entitled to habeas relief on this ground. (Doc. # 28, pg. 38).

First, the magistrate judge concluded that there was no evidence that police placed the black hoodie, gloves, and mask in a black backpack that was located in the hotel room. Id. at 33–34. The magistrate judge pointed to Detective Erik Witholt's testimony that he and other officers found and photographed items seized from the Best Value Inn room in which Petitioner was found. (Lodgment 2, Rep.'s Tr. Vol. 3, pg. 301). Detective Witholt stated that he found a loaded gun next to the television cabinet, a black hoodie on the floor, and black gloves and a ski mask in the pockets of the hoodie. Id. at 303, 305–06. Detective Witholt then transferred the property to Detective Bussey, who gave the items to Detective Weese, who impounded the items as evidence. Id. at 304, 370–72.  Detective Witholt never stated that he put the hoodie inside of a backpack, and Chang, the prosecution's DNA expert, testified that she received the hoodie, gloves, and ski mask together but said nothing about receiving a backpack or receiving those items packaged in a backpack. Id. at 406–07. Although Detective Darrah testified that two hoodies were recovered, one from Gaunce and one that was in a black bag, the magistrate judge concluded that this did not show that the hoodie, ski mask, and gloves had been placed in a black backpack because Detective Darrah also testified that  he arrived at the hotel room later and had no firsthand knowledge of where the items in question were found. (Doc. # 28, pg. 35; see also Lodgment 2, Rep.'s Tr. Vol. 2, pg. 204).

14cv0429

1    Next, the magistrate judge concluded that Petitioner's due process rights were

2    not violated by the trial court's admittance of the DNA evidence without a hearing.

3    (Doc. # 28, pg. 35). The magistrate judge determined that admitting the DNA

4    evidence from the hoodie, gloves, and ski mask did not render the trial fundamentally

5    unfair because the jury could draw inferences from Detective Witholt's testimony

6    about the collection of those items and Chang's testimony about the DNA found on

7    those items and the possibility of cross-contamination. Id. at 35–36.

8    The magistrate judge explained that Petitioner had not presented newly

9    discovered evidence proving his innocence as Petitioner had offered only a copy of

10   Detective Witholt's report and an excerpt of Detective Darrah's questions to

11   Petitioner. Id. at 36–37. Detective Witholt's report recounts the items found in the

12   hotel room including a black hoodie with gloves and a hat in the pockets found lying

13   atop a backpack. The excerpt of Detective Darrah questioning Petitioner includes

14   Petitioner's statements that his black backpack might be in the hotel room. (Doc. # 1,

15   pg. 178, 180). The magistrate judge determined that this evidence was not inconsistent

16   with the evidence of record. Id. at 36–37.  Overall, the magistrate judge determined

17   that Petitioner failed to provide evidence showing that he is "probably innocent,"

18   because Petitioner did not prove that the DNA evidence was contaminated and did not

19   refute the other substantial, inculpatory evidence. Id. at 38.

20   **2.    Objection to the Report's Conclusions**

21   In his objections, Petitioner argues that the magistrate judge erred in finding that

22   Petitioner's due process rights were not violated by the trial court's admittance of the

23   DNA evidence. (Doc. # 33, pg. 23–39). First, Petitioner contends that Detective

24   Witholt's testimony that he found the hoodie on the floor of the hotel room is

25   contradicted by Detective Witholt's inventory report, which states that the hoodie was

26   found atop a black backpack. Id. at 23–24. Petitioner appears to argue that this

27   evidence shows that Detective Witholt placed the hoodie in the black backpack as

28   Detective Darrah also testified that a black hoodie was found in a black bag. Id.

14cv0429

Petitioner argues that this evidence makes cross-contamination "a likely possibility" because the black backpack was his and contained his personal effects. Id. at 25. Next, Petitioner argues that the magistrate judge erred in finding that Petitioner's due process rights were not violated by the admission of the DNA evidence at trial because the trial court did not hold an evidentiary hearing on the DNA evidence and this evidence was more prejudicial than probative. Id. at 30. Thus, Petitioner asserts that his due process rights were violated. Id. Petitioner asserts that the Court should not deny his due process claim until he has had the opportunity to have the evidence recovered from the hotel room independently tested. Petitioner further asserts that he need not present evidence showing that he is "probably innocent" because he sufficiently provided clear and convincing evidence that evidence presented at trial was unreliable. Id. at 31–33. Nonetheless, Petitioner argues that he is "probably innocent" because the San Diego Sheriff Department's DNA laboratory report states that Gaunce's DNA matched the major DNA profile found on the gun. Id. at 33–38.

### 3.   Analysis

A federal writ of habeas corpus is not available for an alleged error in the interpretation or application of state law. Wilson v. Corcoran, 562 U.S. 1, 5 (2010). Absent some federal or constitutional violation, a violation of state law does not provide a basis for habeas relief. Id. Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point"). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." Jammal, 926 F.2d at 920.

Upon review of the record, the Court finds that Petitioner has failed to show that his due process rights were violated by the trial court's admission of the DNA

14cv0429

evidence at trial. Chang testified that Petitioner's DNA was found on the hoodie and black mask, but also stated during cross-examination that evidence can become cross-contaminated. As a result, there were multiple permissible inferences the jury could have drawn from Chang's testimony about how Petitioner's DNA ended up on those items. Because there were various permissible inferences the jury could have drawn from the DNA evidence, Petitioner has not demonstrated that the admittance of this evidence violated his due process rights. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

The Court further finds that Petitioner has not presented new evidence affirmatively proving that he is "probably innocent." Boyde v. Brown, 404 F.3d 1159, 1168 (9th Cir. 2005) (explaining that a petitioner requesting habeas relief on the grounds of actual innocence must meet the "extraordinarily high" standard of affirmatively proving that he is probably innocent). Petitioner points to alleged discrepancies in Detective Witholt's trial testimony and report to argue that Detective Witholt moved the black hoodie, gloves, and mask and placed the items on top of or inside of Petitioner's backpack, which resulted in DNA cross-contamination. Petitioner also points to the DNA report which states that: (1) the gun recovered from the hotel room contained DNA from at least two people, (2) the major DNA profile from the gun matches Gaunce's DNA, and (3) the estimated frequency of occurrence of the major DNA profile is 1 in 460 quintillion for African-Americans. Petitioner contends that this report shows that, besides Gaunce, the other source of DNA from the gun belongs to an unknown African American male. Assuming this contention raises a fair assumption, it does not affirmatively establish that Plaintiff is probably innocent.

Petitioner surmises, but has not shown, that the DNA evidence was cross-contaminated. Petitioner has pointed to a report, the results of which Chang testified to, estimating the frequency of occurrence of *the major DNA profile* in the community. The frequency does not speak to secondary DNA profile found on the gun and does not prove that an unidentified African American male was the other contributor of

DNA on the gun. Most importantly, the evidence to which Petitioner points does not affirmatively show that he is "probably innocent," as is required for relief.  Accordingly, the Court finds that Petitioner is not entitled to habeas relief on this claim.

**E.  Claim Three - Ineffective Assistance of Appellate Counsel**

In claim three of the Petition, Petitioner argues that he received ineffective assistance of appellate counsel in violation of his Sixth Amendment rights. (Doc. #1, pg. 115). Petitioner contends that his appellate counsel failed to argue meritorious issues on appeal – namely, that there was insufficient evidence to support Petitioner's count one and two convictions. Id. at 117. Petitioner further contends that his appellate counsel argued against him by referring to evidence the prosecution presented at trial in support of counts one and two and by erroneously stating that Petitioner was registered to the Best Value Inn room in which police found Petitioner and Gaunce. Id. Petitioner first raised this claim in a petition for writ of habeas corpus to the California Supreme Court, which was denied without comment or citation. (See Lodgments 9, 10). The magistrate judge concluded that Petitioner was not entitled to habeas relief regarding his claim for ineffective assistance of appellate counsel, and Petitioner did not object. For the reasons set forth below, the Court adopts the magistrate judge's reasoning as to claim three and finds that Petitioner is not entitled to habeas relief on his claim of ineffective assistance of appellate counsel.

**1.    Summary of the Report's Conclusions**

Because there is no reasoned state court decision, the magistrate judge correctly conducted an independent review of the record to see if the state supreme court's denial of this claim was objectively unreasonable in light of United States Supreme Court authority.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Finding that the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority, the magistrate judge held that Petitioner was not entitled to habeas relief.  (Doc. # 28, pg. 38–41).  First, the magistrate judge explained that Petitioner had failed to show that appellate counsel's

performance was unreasonable or had prejudiced Petitioner, which both must be established to successfully assert this claim under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Next, the magistrate judge found that because there was sufficient evidence supporting Petitioner's count one and two convictions, it was not unreasonable for appellate counsel to decline to raise the issue of sufficiency of evidence supporting those convictions on appeal. (Doc. # 28, pg. 38–40). Additionally, the magistrate judge determined that it was not unreasonable for appellate counsel to refer to some evidence the prosecution presented at trial in support of counts one and two to argue that evidence presented in support of those counts should not have been used to infer that Petitioner was guilty of counts three and four. <u>Id.</u> at 40. Finally, the magistrate judge found that Petitioner's case was not undermined when appellate counsel stated that Petitioner was registered to the Best Value Inn room in which he was found by police because appellate counsel was restating the trial testimony of police officers that they *believed* Petitioner was registered to that room and that Petitioner told police he was registered to the room. <u>Id.</u> at 40–41. Ultimately, the magistrate judge concluded that, given the evidence against Petitioner, there was no reasonable probability that the outcome of Petitioner's appeal would have differed if appellate counsel had argued Petitioner was not registered to that room. <u>Id.</u>

### 2.   Analysis

Because Petitioner did not file an objection to the magistrate judge's determination that Petitioner is not entitled to habeas relief on this claim, and the magistrate judge's analysis is not clearly erroneous, the Court adopts the magistrate judge's findings and conclusions that Petitioner is not entitled to habeas relief as to his third claim for ineffective assistance of appellate counsel. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 152–53 (1985).

### F.  Claim Six - Violation of Confrontation Clause

In claim six of the Petition, Petitioner argues that his Sixth Amendment right to confront witnesses was violated when the trial court failed to make his former

co-defendants available for cross-examination despite admitting evidence relating to those defendants at Petitioner's trial. (Doc. # 1, pg. 74–78, 140–44). Specifically, Petitioner claims that a cell phone photograph of Gaunce, a hat worn by Mitchell, and an image of Mitchell taken from his MySpace page were improperly admitted into evidence against Petitioner without providing him the opportunity to cross-examine Gaunce or Mitchell. Petitioner also appears to argue that the admittance of this evidence violated his due process rights because the prejudicial effect of this evidence outweighed its probative value. Id. at 78. Petitioner first raised this claim in a petition for writ of habeas corpus to the California Supreme Court, which was denied on procedural grounds. (See Lodgments 11, 12). The magistrate judge concluded that Petitioner was not entitled to habeas relief on this claim, and Petitioner did not object. For the reasons set forth below, the Court adopts the magistrate judge's reasoning as to this claim and finds that Petitioner is not entitled to habeas relief regarding his claim that his Sixth Amendment rights were violated.

### 1.    Summary of the Report's Conclusions

Because the state court denied this claim on procedural grounds without reaching the merits, the magistrate judge conducted a de novo review rather than applying AEDPA's deferential standard. See Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005). After doing so, the magistrate judge concluded that Petitioner was not entitled to habeas relief on this claim because he had not shown a violation of the Confrontation Clause or the Due Process Clause. (Doc. # 28, pg. 41–43).

The magistrate judge first determined that Petitioner's Confrontation Clause claim lacked merit because the Confrontation Clause applies to testimonial statements, and a "hat, a cell phone photograph, and a photographic image taken from a 'MySpace' page are neither statements, nor 'testimonial.'" (Doc. # 28, pg. 41–42 (citing Crawford v. Washington, 541 U.S. 36, 53–54 (2004); Delgadillo v. Woodford, 527 F.3d 919, 927 (9th Cir. 2008)). Next, the magistrate judge found that Petitioner's claim that the admittance of this evidence violated his due process rights was also deficient. (Doc. #

28, pg. 42–43). The magistrate judge explained that the admission of evidence violates due process only if no permissible inferences may be drawn from the evidence. Id. at 42 (citing Jammal v. Van de Kamp, 926 F.2d 918, 919–20 (9th Cir. 1991)). The magistrate judge further explained that in order to obtain habeas relief on the basis of an erroneous evidentiary rule, Petitioner must show that the error had a substantial and injurious effect on the verdict. Id. at 42 (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). The magistrate judge found that the evidence was probative as it supported the prosecution's theory that Petitioner was the gunman in the robberies by showing that the other defendants wore distinctive hats and Petitioner did not. (Doc. # 28, pg. 42–43). Therefore, the magistrate judge concluded that the evidence served a permissible purpose and was not prejudicial under Brecht. Finding Petitioner's due process and Confrontation Clause claims deficient, the magistrate judge determined that Petitioner was not entitled to habeas relief on these claims. Id. at 41, 43.

### 2.   Analysis

Petitioner did not file an objection as to this claim, and the magistrate judge's analysis was not clearly erroneous. Accordingly, the Court adopts the magistrate judge's findings and conclusions that Petitioner is not entitled to habeas relief as to his sixth claim for violation of the Sixth Amendment's Confrontation Clause and violation of his due process rights. See Thomas v. Arn, 474 U.S. 140, 152–53 (1985).

### G.  Denial of an Evidentiary Hearing

Petitioner next objects to the magistrate judge's denial of Petitioner's request for an evidentiary hearing on his claims of ineffective assistance of trial counsel (claim one) and erroneous admission of DNA evidence (claim two).[4]  For the reasons set forth below, the Court overrules these objections.

### 1.   Magistrate Judge's Denial of Evidentiary Hearing

The magistrate judge concluded that Petitioner was not entitled to an

---

[4]The magistrate judge also denied Petitioner's request for an evidentiary hearing on his claim of insufficiency of evidence as to counts one and two (claim four). Petitioner does not object to this ruling, so the Court need not address it.

evidentiary hearing on claims one and two because Petitioner did not meet the requisite requirements for obtaining such a hearing. (Doc. # 28, pg. 43–45).  The magistrate judge explained that because the state court did not adjudicate Petitioner's claims one and two on the merits, in order to receive an evidentiary hearing Petitioner would need to show that he diligently attempted to develop the record in state court and met 28 U.S.C. § 2254(e)(2)'s requirements. Section 2254(e)(2) requires Petitioner to make two showings. First, Petitioner must show that his claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or a factual predicate that could not have been previously discovered through due diligence.  28 U.S.C. § 2254(e)(2)(A). Second, Petitioner must show that facts underlying Petitioner's claim are "sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

The magistrate judge determined that Petitioner failed to show he was diligent in developing the record in state court. The magistrate judge noted that diligence "require[s] in the usual case that the prisoner, at a minimum, seek[s] an evidentiary hearing in state court in the manner prescribed by law," and California's requirements for proper pleading in habeas petitions and related requests for evidentiary hearings are set forth in People v. Duvall, 9 Cal. 4th 464, 474 (Cal. 1995).  (Doc. # 28, pg. 45). The magistrate judge found that Petitioner failed to request an evidentiary hearing in the manner prescribed by California law because the California Supreme Court denied Petitioner's petition and request for evidentiary hearing with a cite to  Duvall, indicating that Petitioner did not meet the proper pleading requirements.  Id. Thus, the magistrate judge found that Petitioner had not been diligent in developing the state court record. Next, the magistrate judge found that Petitioner also failed to satisfy 28 U.S.C.§ 2254(e)(2)'s requirements because his request did not rely on a new rule of constitutional law or identify new facts that could not have been previously discovered through due diligence.  Id. Accordingly, the magistrate judge concluded that Petitioner

was not entitled to an evidentiary hearing as to claims one and two. Id.

### 2.   Objection to Denial of Evidentiary Hearing

Petitioner objects to the magistrate judge's denial of an evidentiary hearing. Petitioner argues that he was diligent in attempting to develop the record in state court because he pled "sufficient facts in his state petition" and included "statements of the facts, and memorandum of points and authorities" in his petition. (Doc. # 33, pg. 40). Petitioner further argues that Duvall is inapplicable and that he has alleged facts which entitle him to relief under Strickland. Id. at 41–47.

### 3.   Analysis

A post-AEDPA petitioner requesting an evidentiary hearing in federal court must first show that he developed the factual basis of his claims in the state courts. See Insyxiengmay v. Morgan, 403 F.3d 657, 670 (9th Cir. 2005); Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). If the petitioner has failed to develop the factual basis of his claims in state court, the federal court must deny an evidentiary hearing, absent certain narrow exceptions set forth in 28 U.S.C. § 2254(e)(2).[5]  Insyxiengmay, 403 F.3d at 670; 28 U.S.C. § 2254(e)(2). The Supreme Court has interpreted 28 U.S.C. § 2254(e)(2) as requiring a state prisoner to make diligent efforts to investigate and pursue claims in state court. Williams v. Taylor, 529 U.S. 420, 435–36 (2000).

---

[5]Specifically, the statute provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B).

Diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437.

The California Supreme Court set forth the procedure for obtaining an evidentiary hearing in state habeas proceedings in its decision in People v. Duvall, 9 Cal. 4th 464 (Cal. 1995). Thus, contrary to Petitioner's assertions, Duvall is applicable. According to Duvall, the state habeas petition "should both (i) state fully and with particularity the facts on which relief is sought, as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." 9 Cal.4th at 474 (internal citations omitted). The reviewing court evaluates the petition by asking whether, assuming the factual allegations are true, the petitioner would be entitled to relief. Id. at 474–75. If the petitioner fails to state a prima facie case for relief, the court will summarily deny the petition. Id. at 475. If the court finds that the factual allegations, taken as true, establish a prima facie case for relief, then the court will issue an order to show cause, directing the respondent to address the petitioner's claims and their factual basis, as a procedural step preceding the grant of an evidentiary hearing. Id.

Here, the California Supreme Court did not reach the merits of Petitioner's claims but dismissed them for insufficient particularity as evidence by the court's citation to Duvall. (See Lodgments 11, 12.) By failing to set forth his claims with sufficient particularity, Petitioner failed to exercise diligence in developing the factual basis for his claims in state court. Thus, under § 2254(e), he may not receive an evidentiary hearing in federal court unless he can meet the stringent requirements of § 2254(e)(2).[6] Petitioner does not rely on a new rule of constitutional law, nor does he identify any newly discovered facts that could not have been previously discovered through due diligence. Most importantly, despite his contestations, Petitioner has not shown that the facts underlying his claims of DNA cross-contamination amount to clear and convincing evidence such that no reasonable factfinder would have found him

---

[6] See note 5.

1    guilty of the underlying offenses upon review of that evidence. Accordingly, the Court

2    overrules Petitioner's objection to the magistrate judge's denial of his request for an

3    evidentiary hearing.

4    H.  Denial of Request for Discovery

5         Petitioner next objects to the magistrate judge's denial of Petitioner's request for

6    discovery of documentation related to the collection and DNA testing of the black

7    hoodie, ski mask, and black gloves. For the reasons set forth below, Petitioner's

8    objection  to the magistrate judge's denial of his request for discovery is overruled.

9         1.    Magistrate Judge's Denial of Discovery Request

10        The magistrate judge concluded that Petitioner was not entitled to discovery as

11   to his claims of insufficient evidence (claims four and five) and ineffective assistance of

12   appellate counsel (claim three) because those claims were adjudicated on the merits in

13   state court, and a federal habeas court is limited to facts presented in state court

14   regarding claims adjudicated on the merits. (Doc. # 28, pg. 46–47 citing (Pinholster,

15   563 U.S. 170 (2011); Runningeagle v. Ryan, 686 F.3d 758, 773–74 (9th Cir. 2012)).

16   The magistrate judge further concluded that Petitioner was not entitled to discovery as

17   to his claims of ineffective assistance of trial counsel (claim one), due process violations

18   (claim two), and violation of the Confrontation Clause (claim six) because Petitioner

19   failed to show good cause for discovery and entitlement to relief if the facts alleged

20   were fully developed. (Doc. # 28, pg. 47).

21        2.    Objection to Denial of Discovery Request

22        Petitioner objects to the magistrate judge's denial of his discovery requests

23   pertaining to his claims of ineffective assistance of trial counsel (claim one) and

24   violation of due process rights from the admittance of the DNA evidence (claim two).[7]

25   (Doc. #33, pg. 48–52). Petitioner asserts that Detective Darrah's testimony is good

26   cause to show that the black hoodie was inside of Petitioner's backpack, which could

27

28        [7]The Court will not address the magistrate judge's denial of discovery regarding
     claims three through six because Petitioner did not object thereto.

14cv0429

have cross-contaminated the DNA evidence on the hoodie, gloves, and mask. Petitioner asserts that discovery of documentation relating to the collection and testing of that evidence "provide[s] a critical link raising the possibility" of cross-contamination, which Petitioner asserts entitles him to relief.  Id. at 49. Petitioner further asserts that, under Jones v. Wood, 114 F.3d 1002 (9th Cir. 1997),  he is entitled to DNA testing of this evidence to prove his ineffective assistance of trial counsel claim. Id. at 49–50.

### 3.   Analysis

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. Bracy v. Gramley, 520 U.S. 899, 904 (1997). However, Rule 6(a) of the Rules Governing § 2254 Cases provides that a "party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Before deciding whether a petitioner is entitled to discovery under Rule 6(a), a court must first identify the essential elements of the petitioner's underlying claim and then determine whether the petitioner has shown good cause for appropriate discovery to prove his claim. Bracy, 520 U.S., at 904. Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief...." Id. at 908–09. However, it is important to note that "[h]abeas is an important safeguard whose goal is to correct real and obvious wrongs. It was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'" Rich v. Calederon, 187 F.3d 1064, 1067 (9th Cir.1999) (internal citations omitted).

As noted above, a claim of ineffective assistance of counsel requires a showing of prejudice, which is denoted by the reasonable probability that the result of the proceeding would have been different but-for counsel's alleged deficient performance. See Strickland v. Washington, 466 U.S. 668, 690 (1984). Here, Petitioner has not shown that he was prejudiced by trial counsel's failure to retain an independent expert

to re-test the DNA evidence. Further, the jury heard evidence that the clothing items could have been cross-contaminated because trial counsel elicited testimony from Chang to this effect. Moreover, Petitioner has not demonstrated that there is a reasonable probability that the outcome of the trial would have differed if an expert had testified about the possibility of cross-contamination, especially in light of the other substantial evidence presented against Petitioner at trial. Further, Petitioner has not presented allegations demonstrating that he would be entitled to relief if afforded additional discovery regarding his claim of due process violation, which precludes further discovery as to that claim.

Finally, contrary to Petitioner's assertions, he is not entitled to DNA testing to prove ineffective assistance of counsel under Jones v. Woods, 114 F.3d 1002 (9th Cir. 1997). In Jones, the petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 arguing, in part, ineffective assistance of counsel. Id. at 1007. Petitioner argued, in pertinent part, that counsel's failure to investigate blood and hair evidence linked to the murder of his wife amounted to ineffective assistance where the petitioner continually insisted that he was innocent, he knew the identity of the actual murderer, and he would be exonerated if his attorney had conducted forensic testing on blood from petitioner's jeans and foreign hairs found on his deceased wife. Id. at 1005–6, 1010–11. The Jones court held that counsel's failure to investigate amounted to ineffective assistance and prejudiced the petitioner. Id. at 1011. However, Jones is distinguishable from the instant case for several reasons. First, the blood and hair evidence in Jones was never tested.  Here, the San Diego Sheriff's Office conducted a DNA test on the black hoodie, gloves, mask, and gun, the results of which linked Petitioner to some of those items. Second, Petitioner does not establish prejudice as was established by the Jones petitioner. In Jones, the petitioner proved prejudice because testing the evidence could have proven that the blood found on petitioner was not his wife's blood and foreign hairs on the wife's body came from a different man. The court found that there was a reasonable probability that this evidence would have

changed the outcome of the petitioner's trial. Id. at 1010–13. Here, there is no prejudice. Even assuming arguendo a DNA re-test would establish that the items in question were cross-contaminated, Petitioner has not shown the reasonable probability that this would have changed the result of his proceeding, especially considering the significant, additional evidence linking Petitioner to the charged crimes.

In conclusion, Petitioner has not established good cause for discovery, and his objection to the magistrate judge's denial of his request for discovery is overruled.

## I.  Denial of Request for Expert Witness

Petitioner objects to the magistrate judge's denial of Petitioner's request for appointment of an expert to re-test the DNA evidence. For the reasons set forth below, the Court overrules Petitioner's objection.

### 1.    Magistrate Judge's Denial of Request for Expert Witness

The magistrate judge explained that 18 U.S.C.§ 3006A(e)(1), which allows district courts to appoint counsel to represent habeas petitioners when the interests of justice so require, contemplates that *counsel* can request funding for investigative services. Because Petitioner is proceeding pro se, the magistrate judge concluded that he was not entitled to funding for an expert under 18 U.S.C.§ 3006A(e)(1). (Doc. # 28, pg. 47). The magistrate judge also found that hiring an expert would be futile. Id. at 47–48.

### 2.    Objection to Denial of Request for Expert Witness

Petitioner objects to the magistrate judge's denial of appointment of an expert witness. Petitioner contends that an expert witness could demonstrate the likelihood of cross-contamination, which, in turn, proves his claims for ineffective assistance of trial counsel and due process violations.  Petitioner further asserts that an expert witness can use the San Diego Sheriff Department's DNA report to show that an unidentified man was the source of the secondary DNA found on the gun that police recovered from the hotel room in which Petitioner and Gaunce were found.

### 3.    Analysis

14cv0429

The expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress. See United States v. MacCollom, 426 U.S. 317, 321 (1976); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989). There are two potential sources of Congressional authorization: 28 U.S.C. § 1915 and 18 U.S.C. § 3006A. The in forma pauperis statute, 28 U.S.C. § 1915, does not authorize the expenditure of funds to pay for a private investigator. Tedder, 890 F.2d at 211–12. The Criminal Justice Act ("CJA") provides for representation of indigent defendants and authorizes a district court to appoint counsel to represent a financially eligible habeas petitioners when "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application." Id. at § 3006A(e)(1). "The text of the statute contemplates that 'counsel' is the person who may request funding for investigative services, and that, in turn, suggests that counsel must first have been appointed under § 3006A before the court will consider authorizing funding for investigative services." Covarrubias v. Gower, No. C-13-4611, 2014 WL 342548, *1 (N.D. Cal. 2014).

Because Petitioner is proceeding pro se and the Court has not determined that the interests of justice require appointment of counsel for Petitioner, he is likely ineligible to receive finding for investigative services under § 3006A(e)(1). Even assuming arguendo that a pro se habeas petitioner can receive funding for a private investigator, the requesting petitioner would still need to meet the substantive criteria for the authorization of such funding, which Petitioner has not done.  Discovery in a habeas action is only allowed to the extent that the court, in the exercise of its discretion and for good cause shown, allows it. See Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. Good cause for discovery under Rule 6(a) is shown "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief ....'" Bracy v. Gramley, 520 U.S. 899,

908–09 (1997) (citation omitted); <u>Pham v. Terhune</u>, 400 F.3d 740, 743 (9th Cir. 2005).

Petitioner has not shown good cause for this Court to permit discovery. As noted above, Petitioner's claim for ineffective assistance of trial counsel fails because Petitioner did not establish the reasonable probability that the result of the trial would have been different had trial counsel retained an expert to independently test the DNA evidence. Because Petitioner cannot show that he would be entitled to relief on this claim if the facts were further developed, Petitioner has failed to show the good cause required for the Court to permit further discovery through the appointment of an expert witness.

To the extent Petitioner requests appointment of an expert to conduct further discovery regarding the San Diego Sheriff Office's DNA report, Petitioner has also failed to demonstrate the requisite good cause. Petitioner misunderstands the DNA report. The frequencies of occurrence on the report, which Petitioner believes prove his innocence, refer only to the frequency of occurrence of the *major* DNA profile, which matched Gaunce's DNA. Thus, the numbers refers to the likelihood that another member in the community would have the same DNA identifiers as Gaunce. It does not speak to the other DNA found on the gun. Thus, Petitioner has failed to show that hiring an expert to conduct further discovery would entitle him to relief. Accordingly, Petitioner's objection to the magistrate judge's denial of Petitioner's request for appointment of an expert is overruled.

## J.  Denial of Request for Counsel

Finally, Petitioner objects to the magistrate judge's denial of Petitioner's request for counsel. Petitioner has also filed an additional motion for appointment of counsel. For the reasons set forth below, the Court overrules Petitioner's objection to the magistrate judge's denial of his request for counsel and denies Petitioner's motion for counsel.

### 1.    Magistrate Judge's Denial of Request for Counsel

14cv0429

1    The magistrate judge found that, under 18 U.S.C. § 3006A, the interests of

2   justice did not require the appointment of counsel. (Doc. # 28, pg. 48, n. 10).

3           **2. Objection to Denial of Request for Counsel and Motion to Appoint Counsel**

4           Petitioner objects to the magistrate judge's denial of his request for counsel.

5   Petitioner contends that counsel is needed to obtain an expert and handle discovery

6   matters, and "for the same reason appointment of an expert, discovery, and evidentiary

7   hearing [sic] are required." (Doc. # 33, pg. 54). Petitioner's motion to appoint counsel

8   argues that he should be granted counsel for the same reasons set forth in his objections

9   – namely, that he needs counsel to conduct additional discovery, retain an expert, and

10  hold further evidentiary hearings so that he can prove both his innocence and his

11  ineffective assistance of trial counsel claim. (See Doc. # 37, pg. 3–4).

12          **3.   Analysis**

13          The Sixth Amendment right to counsel does not extend to federal habeas corpus

14  actions by state prisoners. Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986);

15  Hood v. Galaza, 47 F.Supp.2d 1144, 1149 (S.D. Cal. 1999). However, financially

16  eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 may obtain

17  representation whenever the court "determines that the interests of justice so require.'"

18  18 U.S.C. § 3006A(a)(2)(B); Terrovona v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir.

19  1990). The interests of justice require appointment of counsel when the court conducts

20  an evidentiary hearing on the petition or permits discovery. Terrovona, 912 F.2d at

21  1177; Knaubert v. Goldsmith, 791 F.2d 722, 728 (9th Cir. 1986); Rule 8(c), 28

22  U.S.C. foll. § 2254. The appointment of counsel is discretionary when no evidentiary

23  hearing is necessary. Knaubert, 791 F.2d at 728.

24          In the Ninth Circuit, "[i]ndigent state prisoners applying for habeas relief are

25  not entitled to appointed counsel unless the circumstances of a particular case indicate

26  that appointed counsel is necessary to prevent due process violations." Chaney, 801

27  F.2d at 1196.  A due process violation may occur in the absence of counsel if the issues

28  involved are too complex for the petitioner. In the Eighth Circuit, "[t]o determine

whether appointment of counsel is required for habeas petitioners with nonfrivolous claims, a district court should consider the legal complexity of the case, the factual complexity of the case, the petitioner's ability to investigate and present his claim, and any other relevant factors." Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994). Because these factors are useful in determining whether due process requires the appointment of counsel, they are considered to the extent possible based on the record before the Court.

The Court finds that Petitioner is not entitled to appointment of counsel because the interests of justice do not so require. As explained herein, there are no grounds on which to permit Petitioner further discovery. Moreover, Petitioner has not been granted an evidentiary hearing, and counsel is not needed to prevent a due process violation. From the face of the petition, filed pro se, it appears that Petitioner understands his case and has an impressive grasp of the facts and the legal issues involved.  Under such circumstances, a district court does not abuse its discretion in denying a state prisoner's request for appointment of counsel, as it is simply not warranted by the interests of justice. See Berry v. Grigas, 171 Fed. App'x 188, 191–2 (9th Cir. 2006); Felton v. Marshall, No. 07cv732, 2009 WL 1043876, *1 (S.D. Cal. 2009).  Therefore, Petitioner's objection to the magistrate judge's denial of his request for counsel is overruled, and Petitioner's motion for appointment of counsel is denied.

## K.  Motion for Reconsideration

On March 8, 2016, Petitioner filed a motion for reconsideration of the magistrate judge's denial of his request for discovery. (See Doc. # 47). Petitioner's request is duplicative of the arguments asserted in his objection to the magistrate judge's denial of discovery. Petitioner contends that Detective Darrah's testimony that a black hoodie was recovered from a black backpack inside the hotel room where Petitioner was found shows that Detective Witholt moved the hoodie into or on top of a black backpack that Petitioner alleges belonged to him and was in the hotel room. (Doc. # 47, pg. 3). Petitioner asserts that this evidence provides good cause for

discovery of documents pertaining to the chain of custody of the black hoodie, mask, and gloves because trial counsel failed to investigate the actual cause of cross-contamination, "possiblely [sic] occurring" when Detective Witholt placed the black hoodie inside Petitioner's backpack. Id. at 1–2. Petitioner then asserts that an expert witness should be appointed to evaluate the likelihood that the clothing items were cross-contaminated, which will, in turn, prove Petitioner's claim for ineffective assistance of trial counsel based on counsel's failure to hire this expert himself. Id. at 5.

Petitioner's motion for reconsideration reiterates the same arguments set forth in his objection to the magistrate judge's denial of discovery. As stated above, Petitioner did not establish the requisite good cause for discovery in his objections, and for the same reasons stated above, the Court finds that Petitioner has not established good cause for discovery in his motion. Accordingly, Petitioner's motion for reconsideration is denied.

## V. CONCLUSION

After a careful de novo review of the portions of the Report to which Petitioner objects, the Court finds that the magistrate judge conducted a cogent evaluation of the issues raised, and this Court adopts the Report's findings and recommendations.  In addition, this Court's review of the Report's findings and recommendations to which Petitioner filed no specific objections reflects that the magistrate judge's findings and recommendations are well founded under existing law and thus are not clearly erroneous.

## VI. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A state prisoner may not appeal the denial of a § 2254 habeas petition unless he obtains a certificate of appealability from a district or circuit judge. 28 U.S.C. § 2253(c)(1)(A); see also United States v. Asrar, 116 F.3d 1268, 1269–70 (9th Cir. 1997) (holding that district courts retain authority to issue

certificates of appealability under AEDPA). A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this threshold showing, a petitioner must show that: (1) the issues are debatable among jurists of reason, (2) that a court could resolve the issues in a different manner, or (3) that the questions are adequate to deserve encouragement to proceed further. Lambright v. Stewart, 220 F.3d 1022, 1024–25 (9th Cir. 2000) (citing Slack v. McDaniel, 529 U.S. 473 (2000); Barefoot v. Estelle, 463 U.S. 880 (1983)).

Mindful of the "relatively low" threshold for granting a certificate of appealability, Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002), and that "the petitioner need not show that he should prevail on the merits," Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000), the Court finds claims 1 and 2 suitable for a certificate of appealability. As to claims 3, 4, 5, and 6, based on this Court's review of the Report, the Court finds that no issues are debatable among jurists of reason, no issues could be resolved in a different manner, and no questions are adequate to deserve encouragement to proceed further. Accordingly, this Court denies Petitioner a certificate of appealability as to claims 3, 4, 5, 6, but grants Petitioner a certificate of appealability as to claims 1 and 2.

## VII. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  The Findings and Recommendations issued by the magistrate judge on April 1, 2015 (Doc. # 28) are ADOPTED in full;

2.  Petitioner's Objections to the Magistrate Judge's Report and Recommendation (Doc. # 33) are OVERRULED in their entirety;

3.  The Petition for Writ of Habeas Corpus (Doc. # 1) is DENIED;

4.  Petitioner's Motion for Appointment of Counsel (Doc. # 37) is DENIED;

5.  Petitioner's Motion for Reconsideration of the Magistrate Judge's Discovery Order (Doc. # 47) is DENIED;

1      6.     A certificate of appealability is GRANTED as to claims 1 and 2, but

2            DENIED as to claims 3, 4, 5, and 6; and

3      7.     The Clerk of Court shall enter judgment accordingly.

4  Dated: June 1, 2016

5

6                               JOHN A. HOUSTON

7                               United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14cv0429